**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**
www.okwd.uscourts.gov

**JOAN KANE**
CLERK

**SHANNON M. SHOULDERS**
CHIEF DEPUTY

200 N.W. 4th Street, Room 1210
Oklahoma City, Oklahoma 73102
(405) 609-5000     Fax (405) 609-5099

☐ Pro Se     ☐ Retained     ☐ Court Appointed     ☐ USA
(IFP Granted)

Case No:                                        Date Filed:
Style of Case:
Appellant:

☐ Notice of Appeal                    ☐ Amended Notice of Appeal
☐ Interlocutory Appeal                ☐ Cross Appeal
                                      ☐ Tenth Cir. Case No.

Pro se Appellant:
☐ Motion IFP Forms Mailed/Given     ☐ Motion IFP Filed     ☐ Appeal Fee Paid

Retained Counsel:
☐ Appeal Fee Paid     ☐ Appeal Fee Not Paid

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals.  Please refer to the forms and procedures concerning the requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record found on the Tenth Circuit's website, www.ca10.uscourts.gov.

Payment for this case or motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 working days after the notice of appeal was filed in the Circuit Court.  This form must contain the signature of the court reporter if transcripts are being ordered.

If you have questions, please contact this office.

Sincerely,

JOAN KANE, COURT CLERK

by:  _s/_____
          Case Administrator

cc:     Clerk of the Court, Tenth Circuit Court of Appeals

APPEAL,CLOSED,ERWIN,_BT

Email All Attys

Email All Attys and Secondary Emails

# U.S. District Court
# Western District of Oklahoma[LIVE] (Oklahoma City)
# CIVIL DOCKET FOR CASE #: 5:25−cv−01204−JD

| | |
|---|---|
| Nguyen v. Bondi et al | Date Filed: 10/12/2025 |
| Assigned to: Judge Jodi W. Dishman | Date Terminated: 12/31/2025 |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (federal) | Jury Demand: None |
| | Nature of Suit: 463 Habeas Corpus − Alien Detainee |
| | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**Khai Nguyen**                    represented by   **Nicholas Ratkowski**
Ratkowski Law PLLC
332 Minnesota Street
Suite W1610
Saint Paul, MN 55101
651−755−5150
Email: nico@ratkowskilaw.com
Email: nico@ratkowskilaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Pamela Bondi**                    represented by   **Robert Don Evans , Jr**
*Attorney General*                                   US Attorney's Office−OKC
210 W Park Ave
Suite 400
Oklahoma City, OK 73102
405−553−8831
Fax: 405−553−8885
Email: Don.Evans@usdoj.gov
Email: Don.Evans@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

**Kristi Noem**                    represented by   **Robert Don Evans , Jr**
*Secretary of Homeland Security*                     (See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Todd M Lyons**                    represented by   **Robert Don Evans , Jr**
*Acting Director of U.S. Immigration &*              (See above for address)

*Customs Enforcement*                                    *ATTORNEY TO BE NOTICED*

**Respondent**

**Marcos Charles**                          represented by   **Robert Don Evans , Jr**
*Acting Executive Associate Director for*                    (See above for address)
*Enforcement and Removal Operations*                         *ATTORNEY TO BE NOTICED*

**Respondent**

**Mark Siegel**                             represented by   **Robert Don Evans , Jr**
*Field Office Director for Enforcement*                      (See above for address)
*and Removal Operations*                                     *ATTORNEY TO BE NOTICED*

**Respondent**

**US Immigration & Customs**                represented by   **Robert Don Evans , Jr**
**Enforcement**                                              (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Respondent**

**US Department of Homeland Security**      represented by   **Robert Don Evans , Jr**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Respondent**

**Scarlet Grant**
*Warden of Cimarron Correctional*
*Facility*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/12/2025 | 1 | | PETITION for Writ of Habeas Corpus filed by Khai Nguyen. (Attachments: # 1 Exhibit 1 – Press Release – 100 Days of Fake News, # 2 Civil Cover Sheet)(rp) (Entered: 10/15/2025) |
| 10/15/2025 | 2 | | NO PREVIOUS Cases (rp) (Entered: 10/15/2025) |
| 10/15/2025 | 3 | | ENTER ORDER REFERRING CASE to Magistrate Judge Shon T. Erwin. Signed by Deputy Clerk on 10/15/25. (rp) (Entered: 10/15/2025) |
| 10/15/2025 | 4 | | Receipt for Money Received from Khai Nguyen in the amount of $5.00, receipt number 500014104 regarding 1 Petition for Writ of Habeas Corpus (naa) (Entered: 10/15/2025) |
| 10/15/2025 | 5 | | EMERGENCY MOTION to Expedite *Pursuant to 28 USC 1657* by Khai Nguyen. Motions referred to Shon T. Erwin. (Ratkowski, Nicholas) (Entered: 10/15/2025) |
| 10/15/2025 | 6 | | EMERGENCY MOTION for Temporary Restraining Order *Seeking Expedited Processing Under 28 USC 1657*, EMERGENCY MOTION for Preliminary Injunction by Khai Nguyen. Motions referred to Shon T. Erwin. (Attachments: # 1 Meet and Confer Statement)(Ratkowski, Nicholas) (Entered: 10/15/2025) |

| 10/15/2025 | 7 | | MEMORANDUM in Support re 5 EMERGENCY MOTION to Expedite *Pursuant to 28 USC 1657*, 6 EMERGENCY MOTION for Temporary Restraining Order *Seeking Expedited Processing Under 28 USC 1657*EMERGENCY MOTION for Preliminary Injunction filed by Khai Nguyen. (Attachments: # 1 Certificate of Compliance)(Ratkowski, Nicholas) (Entered: 10/15/2025) |
|---|---|---|---|
| 10/15/2025 | 8 | | ENTRY of Appearance by Nicholas Ratkowski on behalf of Khai Nguyen (Ratkowski, Nicholas) (Entered: 10/15/2025) |
| 10/15/2025 | 9 | | MOTION for Leave to Appear Pro Hac Vice *WITHOUT LOCAL COUNSEL* Filing fee $ 100, receipt number AOKWDC–4814106 by Khai Nguyen. Motions referred to Shon T. Erwin. (Attachments: # 1 PHV Form, # 2 Affidavit, # 3 Certificates of Good Standing)(Ratkowski, Nicholas) (Entered: 10/15/2025) |
| 10/17/2025 | 10 | | ORDER granting 9 Petitioner's Motion for Admission Pro Hac Vice seeking the admission of Nicholas Scott Donald Ratkowski pro hac vice with a request for waiver of the local counsel requirement for this case. The Court excuses counsel from this requirement. See LCvR83.3(c). The Court hereby orders that Nicholas Scott Donald Ratkowski is admitted pro hac vice for the limited purpose of representing the Petitioner in the above–captioned matter. Signed by Magistrate Judge Shon T. Erwin on 10/17/2025. (mc) (Entered: 10/17/2025) |
| 10/17/2025 | 11 | | **ORDER FOR RESPONSE** –– Respondents shall file an answer, motion or other response within fourteen (14) days from this order's date. ORDER granting re 5 EMERGENCY MOTION to Expedite *Pursuant to 28 USC 1657* filed by Khai Nguyen. See Order as more fully set out. Signed by Magistrate Judge Shon T. Erwin on 10/17/2025. (mc) (Entered: 10/17/2025) |
| 10/29/2025 | 12 | | ENTRY of Appearance by Robert Don Evans, Jr on behalf of Pamela Bondi, Marcos Charles, Todd M Lyons, Kristi Noem, Mark Siegel, US Department of Homeland Security, US Immigration & Customs Enforcement (Evans, Robert) (Entered: 10/29/2025) |
| 10/29/2025 | | | **NOTICE FROM THE COURT** : The Court sets this case for a telephonic conference for 10/29/2025 at 04:20 PM before Judge Jodi W. Dishman. (nv) (Entered: 10/29/2025) |
| 10/29/2025 | 13 | | Minute Entry. Proceedings held before Judge Jodi W. Dishman: Telephonic Conference held on 10/29/2025. Judge Dishman makes a disclosure as fully set out in this minute entry. (nv) (Entered: 10/29/2025) |
| 10/31/2025 | 14 | | RESPONSE re 11 Order for Response, Terminate Motions,, 1 Petition for Writ of Habeas Corpus filed by Pamela Bondi, Marcos Charles, Todd M Lyons, Kristi Noem, Mark Siegel, US Department of Homeland Security, US Immigration & Customs Enforcement. (Attachments: # 1 Attachment 1–McGettrick Declaration, # 2 Attachment 2–Notice to Appear; Order of Removal, # 3 Attachment 3–Texas v Nguyen, No. F–9677908–IH (redacted records), # 4 Attachment 4–Texas v Nguyen, Nos. F0426966–H and F0426178–H (redacted record))(Evans, Robert) (Entered: 10/31/2025) |
| 11/04/2025 | 15 | | REPLY by Petitioner Khai Nguyen re 14 Response,, filed by Khai Nguyen. (Ratkowski, Nicholas) (Entered: 11/04/2025) |
| 11/12/2025 | 16 | 5 | |

| | | | |
|---|---|---|---|
| | | | REPORT AND RECOMMENDATION –– re 1 Petition for Writ of Habeas Corpus filed by Khai Nguyen. It is recommended that the Court grant Petitioner's request for habeas relief and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. It is further recommended that the Court order Respondents to submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody. Adoption of this Report and Recommendation will render moot Petitioner's pending Motion re 6 EMERGENCY MOTION for Temporary Restraining Order *Seeking Expedited Processing Under 28 USC 1657* and EMERGENCY MOTION for Preliminary Injunction filed by Khai Nguyen. This Report and Recommendation terminates the referral by the District Judge in this matter. Objections to R&R due by 11/19/2025. All as more fully set out. Signed by Magistrate Judge Shon T. Erwin on 11/12/20. (mc) (Entered: 11/12/2025) |
| 11/12/2025 | | | Magistrate Judge Shon T. Erwin no longer assigned to case. (mc) (Entered: 11/12/2025) |
| 11/19/2025 | 17 | | OBJECTIONS re 16 REPORT AND RECOMMENDATION re 6 EMERGENCY MOTION for Temporary Restraining Order *Seeking Expedited Processing Under 28 USC 1657*EMERGENCY MOTION for Preliminary Injunction filed by Khai Nguyen, 1 Petition for Writ of Habeas Corpus filed by Pamela Bondi, Marcos Charles, Todd M Lyons, Kristi Noem, Mark Siegel, US Department of Homeland Security, US Immigration & Customs Enforcement. (Evans, Robert) (Entered: 11/19/2025) |
| 11/19/2025 | 18 | | **ENTER ORDER** re 17 Respondents' Objection to the Report and Recommendation. The Court expedites the Petitioner's deadline to file an optional response to the Objection, on or before November 26, 2025. Signed by Deputy Clerk on 11/19/2025. (nv) (Entered: 11/19/2025) |
| 11/20/2025 | 19 | | RESPONSE re 17 Objections, filed by Khai Nguyen. (Ratkowski, Nicholas) (Entered: 11/20/2025) |
| 12/31/2025 | 20 | 20 | **ORDER** re Report and Recommendation and Emergency Motion. The Court dismisses without prejudice to refiling Mr. Nguyen's habeas petition [Doc. No. 1], denies as moot Mr. Nguyen's emergency motion [Doc. No. 6], and rejects the Report and Recommendation [Doc. No. 16]. A separate judgment will follow. *See* Order for all details. Signed by Judge Jodi W. Dishman on 12/31/2025. (cd) (Entered: 12/31/2025) |
| 12/31/2025 | 21 | 31 | **JUDGMENT.** Pursuant to the Order filed today, the Court dismisses without prejudice Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] as premature. Signed by Judge Jodi W. Dishman on 12/31/2025. (cd) (Entered: 12/31/2025) |
| 01/04/2026 | 22 | | NOTICE OF APPEAL as to 20 Order Declining Report and Recommendation, Terminate Motions,, 21 Judgment, by Khai Nguyen. (Attachments: # 1 Decision on appeal, # 2 Judgment)(Ratkowski, Nicholas) Refiled as Doc. 23 to include proof of payment of appellate filing fee. (Entered: 01/04/2026) |
| 01/04/2026 | 23 | 32 | NOTICE OF APPEAL as to 20 Order Declining Report and Recommendation, Terminate Motions,, 21 Judgment, by Khai Nguyen. Filing fee $ 605, receipt number AOKWDC–4876334. (Ratkowski, Nicholas) (Entered: 01/04/2026) |

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KHAI NGUYEN, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | )  Case No. CIV-25-1204-JD |
| | ) |
| PAMELA BONDI et al., | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

Khai Nguyen seeks habeas corpus relief under 28 U.S.C. § 2241. (ECF No. 1).
Petitioner also requests a temporary restraining order and preliminary injunction
"enjoining Respondents . . . [from] continuing to infringe on [his] constitutional rights,"
"an emergency preliminary order requiring Respondents to give [him] due process prior
to removing him to an allegedly safe third country in the form of a full merits hearing for
asylum, withholding of removal, and [Deferral of Removal under the Convention Against
Torture (DCAT)] before an immigration judge . . . with a right to an administrative appeal
to the Board of Immigration Appeals." (ECF No. 6:1-2).[1]

United States District Judge Jodi Dishman referred the matter to the undersigned
magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).
Respondents filed a Response and Petitioner replied. (ECF Nos. 14 & 15). For the reasons

---

[1] Petitioner also asks the Court "to order Respondents to provide 72-hour notice of any intended
movement of [his person] pending the adjudication of [his] habeas corpus petition." (ECF No.
6:2). Petitioner's request is moot as the Court ordered Respondents to provide 72-hour "advance
notice of any scheduled removal or transfer of Petitioner" in its order directing Respondents to
respond to the Petition. (ECF No. 11:2).

set forth below, the undersigned recommends the Court **GRANT** habeas corpus relief and order Petitioner's immediate release.

## I.    FACTUAL BACKGROUND

Petitioner is a citizen of Vietnam who was admitted to the United States in 1990 as a Lawful Permanent Resident. (ECF No. 14:8). Following a November 1997 conviction for sexual assault of a child, an Immigration Judge ordered Mr. Nguyen removed from the United States in 1998. (ECF Nos. 1:1 & 14:8). Petitioner did not appeal his order of removal, rendering it final on April 2, 1998, or alternatively, on March 3, 1998 if he waived the appeal. (ECF No. 1:1). Petitioner remained in detention for "an unknown period of time believed to be about three years, far in excess of six months." (ECF No. 1:2). Petitioner was eventually released on an Order of Supervision (OOS) in 2001. (ECF No. 1:2) On August 5, 2004, a grand jury indicted Petitioner with intentionally and knowingly exposing his genitals to a child and on October 27, 2004, he was indicted for failing to register as a sex offender. (ECF No. 14-4:1, 8). On February 23, 2006, he was sentenced to a 5-year prison term and ordered to pay a $1,500.00 fine after having pled guilty to third-degree felonies of indecency to a child younger than 17 years and failure to register as a sex offender. (ECF Nos. 14-1:2 & 14-4:2, 5). Following his release from prison, Mr. Nguyen entered ICE custody, and on November 19, 2009, he was released on an order of supervision (OOS). (ECF Nos. 14:8-9; 14-4:2, 5). Petitioner complied with the OOS's requirements to appear for routine check-ins with Immigration and Customs Enforcement (ICE) and updated his address, as required, whenever he relocated. (ECF No. 1:2).

Petitioner alleges that he was wrongfully detained while reporting to his regular check-in on August 26, 2025. (ECF No. 1:2). He further alleges that he was never served with a proper Notice of Revocation of Release ("Notice") providing an explanation of why his OOS was being revoked, nor was he afforded any opportunity to challenge any Notice. (ECF No. 1:12). Petitioner contends that his detention is "designed to send a message to other individuals with final orders of removal that they need to leave the United States or they will be jailed indefinitely and without any process." (ECF No. 1:3). Petitioner alleges he cannot return to Vietnam because he does not have the requisite travel documents. (ECF No. 1:2. 3). He states that he has applied for travel documents before, but his applications have consistently been denied. (ECF No. 1:2) And Vietnam, his alleged country of origin, has no record of his citizenship. (ECF No. 1:3). Petitioner alleges that "to the best of [his] knowledge" no attempts at removal to a third country have been attempted since he was detained. (ECF No. 1:3). Mr. Nguyen states that he has not been asked to apply for a travel document for any country since being detained. (ECF No. 1:2, 3).[2] Petitioner contends that removal is unlikely to occur any time in the reasonably foreseeable future and his "aggregate period of civil immigration confinement exceeds six months and continues to grow." (ECF No. 1:3, 8).

---

[2] Respondents submit an affidavit from George McGettrick, ICE deportation officer, which states that he is working on a travel document request to the government of Vietnam for Petitioner and he has sent documents to be translated from English to Vietnamese to be sent to the government of Vietnam, and he has requested and received from Petitioner information regarding his family, including their location and ties to Vietnam. (ECF No. 14-1:2).

## II.    PETITIONER'S CLAIMS

Petitioner alleges that "ICE has denied [him] release because: (A) it incorrectly believes [he] is responsible for reestablishing that removal is not substantially likely to occur in the reasonably foreseeable future; (B) ICE seeks to punish [him] for remaining in the United States after previously having been ordered removed; and (C) ICE seeks to punish [him] to send a message to similarly situated persons who have not yet been detained as a way to encourage those similarly situated people to immediately leave the United States to avoid [his] fate." (ECF No. 1:12).

In Count One, Petitioner requests "declaratory judgment pursuant to 28 U.S.C. § 2201 that [he] is detained pursuant to 8 U.S.C. § 1231(a)(1)," "that [he] has previously demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future ("NSLRRFF")," "that ICE did not rebut [his] prior NSLRRFF showing prior to redetaining him," and "that until ICE rebuts [his] prior NSLRRFF showing, [he] may not be redetained." (ECF No. 1:20-21).

In Count Two, Petitioner contends that his detention by Respondents violates the Immigration and Nationality Act and applicable ICE regulations. (ECF No. 1:21).

In Count Three, Petitioner raises two due process claims. He states that his continued detention in excess of six months violates his "Fifth Amendment guarantee of due process" established in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) as Respondents have not rebutted his prior showing of no substantial likelihood of removal in the foreseeable future. (ECF No. 1:22). And he states a separate due process claim based on his allegations that he has been detained "to punish him and to otherwise send a message

to similarly situated individuals that they must leave the United States to avoid a similar fate." (ECF No. 1:22).

In Count Four, Petitioner alleges that Respondents have violated the Administrative Procedures Act [APA] as "[their] decisions, which represent changes in the agencies' policies and positions, have considered factors that Congress did not intend to be considered, have entirely failed to consider important aspects of the case, and have offered explanations for their decisions that run counter to the evidence before the agencies." (ECF No. 1:23). Petitioner also seeks a temporary restraining order and preliminary injunction preventing Respondents from removing or transferring him outside of the State of Oklahoma pending the disposition of his habeas petition. (ECF No. 6). Respondents are sued in their official capacities. (ECF No. 1:8-9).

## III.   STANDARD OF REVIEW

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.   ANALYSIS

Petitioner argues that "ICE has no information that could reasonably lead it to believe changed circumstances exist that justify redetention under 8 C.F.R. § 241.13(i)(2)-(3)." (ECF No. 1:13-14). He further argues that Respondents have failed to comply with these provisions prior to detaining Petitioner after his release on an OOS and

that no independent alternative basis supports Respondents' decision to renew his detention. (ECF No. 1:21).

## A.    Statutory and Regulatory Framework

Petitioner contends that his prolonged detention following his renewed detention after the final order for his removal violates 8 U.S.C. § 1231(a). (ECF No. 1:1, 16, 21). This statute dictates that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final;
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

The removal period may be extended "and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents . . . or conspires or acts to prevent the alien's removal." *Id.* § 1231(a)(1)(C).

Finally, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *Zadvydas*, 533 U.S. at 701. After that, the detainee may bring a habeas action to

challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner has the initial burden to show "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Presuming the petitioner does so, the burden shifts, requiring "the Government [to] respond with evidence sufficient to rebut that showing." *Id.*

## B.    ICE Failed to Abide By its Regulations When it Revoked Petitioner's OOS

In Count Two, Petitioner alleges that Respondents failed to comply with the Immigration and Nationality Act and ICE's applicable regulations "prior to redetaining [him] after [his] release on an OOS." (ECF No. 1:21).

The revocation of Petitioner's OOS is governed by 8 U.S.C. § 1231(a)(3) as Petitioner was released from ICE detention on November 19, 2009, ECF No. 14-1:2, following "an unknown period of time believed about three years, far in excess of six months," (ECF No. 1:2). Petitioner alleges that "[t]he OOS [was] issued pursuant to 8 C.F.R. § 241.4(e) because it was determined there was no significant likelihood of removal in the reasonably foreseeable future," and "it was necessarily determined at that time that Nguyen did not present an ongoing danger or a flight risk." (ECF No. 1:2). So, the issue before the Court is whether Petitioner's OOS was properly revoked when he was retaken into ICE custody. And the undersigned has determined that it was not.

Respondents do not specify why the OOS was originally issued or rebut Petitioner's allegations that he was released because there was no significant likelihood of his removal in the reasonably foreseeable future. *See* ECF No. 14-1:2. Petitioner alleges that he was detained past the 90-day removal period, and in excess of six months before being

released pursuant to the OOS. (ECF No. 1:2). And ICE Deportation Officer McGettrick, assigned to Petitioner's case, states:

> I am currently working on a travel document request to the government of Vietnam. I have sent documents to be translated from English to Vietnamese to be sent to the government of Vietnam, and I have requested and received from Nguyen information regarding his family, including their location and ties to Vietnam.
>
> In Fiscal Year 2025, as of September 11, 2025, ERO has removed 569 Vietnam citizens to Vietnam. In Fiscal Year 2024, ERO removed only 58 Vietnam citizens to Vietnam. When ERO has identification documents, the government of Vietnam will issue travel documents without interviewing the subject. When ERO does not have identification documents, the government of Vietnam will conduct an interview of its citizen prior to issuing travel documents. ERO has had frequent charter flights to Vietnam.
>
> Based on the Vietnam's willingness to accept its citizens, and the number of successful removals ERO has made to Vietnam this Fiscal Year, I believe removal of Nguyen to Vietnam is significantly likely in the reasonably foreseeable future.

(ECF No. 14-1:2-3). However, it is reasonable to infer that ICE must have made a determination that "there was no significant likelihood of removal in the reasonably foreseeable future" 8 C.F.R. § 241.13(a), (b)(1), before issuing the OOS in 2009.

ICE may revoke an OOS and "return the alien to custody" when, "on account of changed circumstances . . . there [becomes] a significant likelihood [of] the alien['s] remov[a]l in the reasonably foreseeable future," or the alien violates the conditions of supervised release. 8 C.F.R. § 241.13(i)(1) (2). Respondents do not allege that Petitioner violated any conditions of release, *see* ECF No. 14, so it appears that Respondents rely on the "changed circumstances" prong as the justification for revocation.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025)

(per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752–53 (1979).

As Petitioner notes, the declaration from Officer McGettrick and Respondent's brief "do[] not claim that Petitioner was informed orally or in writing of the reason for his redetention on August 25, 2025 and thereby concedes Nguyen's claims that such notice was not provided." (ECF No. 15:2). Under § 241.13(i)(3), "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her release," after which the alien will be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* (emphasis added).

There is no indication in the record that Petitioner received formal written notification of the reasons for his renewed detention when he was detained on August 25, 2025, or at any time thereafter. "[Petitioner] does not recall ever having been served with a [Notice] purporting to revoke his OOS," (ECF No. 1:12), and Respondents have not provided a written copy of said Notice to this Court.

Respondents may contend that verbally informing Petitioner of the reasons for revocation suffices for Notice under ICE regulations, but a review of other district court cases involving renewed detentions to effectuate removal shows that ICE typically will provide the detainee with written notice at some point during detention and provide it to the Court when responding to the detainee's habeas petition. *Zhu v. Genalo*, No. 1:25-

cv-06523, 2025 WL 2452352, at * 8 (S.D.N.Y. Aug. 26, 2025) (citing cases); s*ee also Yee*

*S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at *2 (D. Minn. Oct. 9,

2025) ("The next day, having already detained Petitioner, ICE served a [Notice] on him.");

*see e.g.*, *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at (W.D. Ky. Sept.

4, 2025) (noting that the United States provided the district court a copy of the Petitioner's

Notice to correct deficiencies identified by the Petitioner and recognizing that "[he was]

entitled to a Notice . . . pursuant to authority delegated by regulation") (internal quotation

marks omitted); *Umanzor-Chavez v. Noem*, SAG-25-01634, 2025 WL 2467640, at *2 (D.

Md. Aug. 27, 2025) (noting that when Petitioner reported to ICE check-in his OOS "was

revoked, and he was served with a notice that ICE intends to remove him to Mexico.")

(internal quotation marks omitted).

     This requirement of written notice is bolstered by another ICE regulation, §

214.4(d), which provides:

> A copy of any decision by the district director, Director of the Detention and
> Removal Field Office, or Executive Associate Commissioner to release or to
> detain an alien shall be provided to the detained alien.

8 C.F.R. § 241.4(d) (emphasis added).

     Respondents have also failed to demonstrate to the Court that they made the

required determination for revocation pursuant to § 241.13(i)(2). Section 241.13(i)(2)

provides that ICE "may revoke an alien's release under [§ 241.13] and return the alien

to custody if, on account of changed circumstances, . . . [it] determines that there is a

significant likelihood that the alien may be removed in the reasonably foreseeable future."

As discussed, the officer assigned to Mr. Nguyen's case states: (1) he is "working on a

travel document request to the government of Vietnam;" (2) he is in receipt of information regarding Petitioner's familial ties to Vietnam; (3) 569 citizens have been removed to Vietnam in fiscal year 2025, exhibiting Vietnam's "willingness to accept its citizens." *See supra*.

Other Courts have found similar declarations insufficient to prove a significant likelihood of removal in the reasonably foreseeable future; especially in light of the fact that, although Vietnam is exhibits its "willingness to accept its citizens," Mr. Nguyen has stated that Vietnam has no record of his alleged citizenship, and Nguyen does not have a Vietnamese birth certificate.[3] See *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kinds of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ").

---

[3] (ECF No. 1:3).

To this end, one sister court has noted:

After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. This meant that Vietnamese immigrants who had arrived before that date would not be considered for repatriation.

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. After that time expired, most detainees were released on orders of supervision.

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them." In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. ICE also began re-detaining some individuals who had been released on orders of supervision.

But this policy did not last long. In 2018, following additional meetings between United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal.

In 2020 the policy changed again when the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. Under Section 4 of the MOU, Vietnam affirmed that it "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States" if the individual meets four conditions. First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship). Second, the individual must have violated U.S. law, been

ordered removed by a U.S. authority, and completed any sentence of imprisonment. Third, the individual must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. . . . Petitioner asserts that from September 2021 to September 2023, the United States deported and repatriated only four pre 1995 immigrants to Vietnam. . . .

*Tran v. Scott*, No. 2:25-cv-01886-TMC-BAT, 2025 WL 2898638, at *2 (W.D. Wash. Oct. 12, 2025) (emphasis added) (internal citations omitted).[4] Petitioner is a pre-1995 Vietnamese immigrant, *see* ECF No. 14:8, and Respondent makes no mention of the MOU in its filings.

In the end, as a result of ICE's failure to provide Petitioner with the required notice before his renewed detention, lack of apparent determination of changed circumstances necessitating revocation, and uncertainty regarding Petitioner's Vietnamese citizenship, the undersigned finds that ICE's revocation of his OOS was unlawful. *Qui*, 2025 WL 2770502, at 1-2. (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). As a result, Petitioner is entitled to his immediate release subject to the same OOS that governed his earlier release.[5]

---

[4] *See United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (noting court's "discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters bearing directly upon the disposition of the case at hand") (internal quotation marks omitted).

[5] The undersigned does not address Petitioner's remaining arguments as to how the revocation of his release is otherwise unlawful under the APA or under *Zadvydas*. The undersigned also declines to address Petitioner's request for declaratory judgment as to the legality and nature of his detention under ICE regulations and whether ICE's actions were arbitrary and capricious as his immediate release, if this Report and Recommendation is adopted, will moot these requests.

## V.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. The undersigned further recommends that the Court order Respondents to submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody.[6]

The parties are advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **November 19, 2025**, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[7] Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

---

[6] Adoption of this Report and Recommendation will render moot Petitioner's pending emergency motion for temporary restraining order and preliminary injunction, ECF No. 6.

[7] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. See Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); see also Whitmore v. Parker, 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

## VI.   STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on November 12, 2025.

_Shon T. Erwin_

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KHAI NGUYEN,                     )
                                 )
            Petitioner,          )
                                 )
v.                               )        Case No. CIV-25-01204-JD
                                 )
PAMELA BONDI, et al.,            )
                                 )
            Respondents.         )

## ORDER

On October 12, 2025, Petitioner Khai Nguyen filed a petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his continued detention by immigration officials and seeks immediate release. Pet. [Doc. No. 1]. For the reasons stated below, the Court dismisses the petition as premature.

## I.    BACKGROUND

Mr. Nguyen is a citizen of Vietnam who was ordered removed from the United States on March 3, 1998, following his November 1997 conviction for sexual assault of a child. Pet. ¶ 2; *see also* [Doc. No. 14 at 8; Doc. No. 14-2 at 1, 3–4].[1] Mr. Nguyen did not appeal his order of removal, rendering it final on April 2, 1998, or alternatively, on March 3, 1998, if he waived the appeal. Pet. ¶ 2. Mr. Nguyen alleges that he "remained in [U.S. Immigration and Customs Enforcement ("ICE")] detention for an unknown period of time believed to be about three years." *Id.* ¶ 3. He was subsequently released on an

---

[1] The Court uses CM/ECF page numbering from the top of district court docket filings in this order.

Order of Supervision ("OOS") in approximately 2001. *Id.* Under the OOS, Mr. Nguyen was required to complete regular check-ins with ICE. *Id.* ¶ 5.

On August 5, 2004, Mr. Nguyen was indicted by a Dallas County grand jury with intentionally and knowingly his genitals to a child. [Doc. No. 14 at 8; Doc. No. 14-4 at 1]. On October 27, 2004, he was indicted by a Dallas County grand jury for failing to register as a sex offender. [Doc. No. 14 at 8; Doc. No. 14-4 at 8]. He pled guilty to third-degree felonies of indecency to a child younger than seventeen years of age and failure to register as a sex offender, and on February 23, 2006, he was sentenced to a five-year term of incarceration in the Texas Department of Criminal Justice ("TDCJ"). [Doc. No. 14 at 8–9; Doc. No. 14-4 at 2, 5].

On July 31, 2009, Mr. Nguyen was released from TDCJ and entered ICE custody. [Doc. No. 14 at 9]. On November 19, 2009, he was released on an OOS. *Id.*; *see also* [Doc. No. 14-1 ¶ 5]. On August 26, 2025, officers with ICE Enforcement and Removal Operations ("ERO") arrested and detained Mr. Nguyen at the Dallas ERO Office during his regular check-in. *See* Pet. ¶ 6; *see also* [Doc. No. 14-1 ¶ 6]. Mr. Nguyen has been detained since that time and is currently being housed at the Cimarron Correctional Facility in Cushing, Oklahoma, which is within this judicial district. Pet. ¶ 10; *see also* 28 U.S.C. § 116(c). He challenges his detention as violative of the Constitution and the laws of the United States. Pet. ¶ 25.

## II.   <u>ANALYSIS</u>

Respondents assert that Mr. Nguyen's habeas petition is premature because, when he filed his petition on October 12, 2025, Mr. Nguyen had been detained for a period

significantly shorter than the presumptively reasonable period under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* [Doc. No. 17 at 3]. Mr. Nguyen contends, inter alia, that the clock does not restart each time a nonconsecutive period of detention begins and that the Court should consider the aggregate time he has spent in custody. Pet. ¶ 29; *see also* [Doc. No. 19 at 4–6]. The Court agrees with Respondents.

A.     **The petition is premature under 8 U.S.C. § 1231 and *Zadvydas*.**

The presumptively reasonable period of six months to effectuate removal stems from both statute and Supreme Court interpretation. Title 8, United States Code, § 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," beginning usually from the date on which the order of removal becomes final. 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). After that ninety-day period, certain aliens may continue to be detained if they are inadmissible, removable on certain grounds, or considered a danger or flight risk. *Id.* § 1231(a)(6).[2] Section 1231(a)(6) does not include a specific time limit regarding how long that post-removal-period detention may last. Rather, in

---

[2] *See also Zadvydas*, 533 U.S. at 688 ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'") (quoting 8 U.S.C. § 1231(a)(6)).

*Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to include an implicit temporal limitation of six months.

In *Zadvydas*, the Supreme Court held that although an alien may not be detained indefinitely, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *See Zadvydas*, 533 U.S. at 699–701. The Supreme Court further held that, after that six-month period, if the alien shows there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. Nguyen concedes that the Court's analysis is governed by the *Zadvydas* framework. Pet. ¶¶ 72–74. Mr. Nguyen has not been detained more than six months.[3] Although he argues that his detention in the aggregate is more than six months, most courts disfavor aggregation. Instead, most courts have long agreed that "the clock restarts each time an alien subject to a final order of removal is again detained by ICE." *Leybinsky v. U.S. Immigr. & Customs Enf't*, No. 10 Civ. 5137(RA), 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013) (citing cases), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014) (unpublished) (directing the district court to dismiss the petition as moot given ICE released the petitioner from custody). *See also Barrios v. Ripa*, No. 1:25-cv-22644-GAYLES, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (citing cases, declining to

---

[3] At the time of the filing of his petition, Mr. Nguyen had been detained forty-seven days. *See* Pet. ¶ 6. He currently has been detained for 127 days as of December 31, 2025, or roughly four months.

aggregate detentions, and concluding that the petitioner's *Zadvydas* claim was premature because he had been detained for a period less than the "presumptively reasonable" six-month period set by the Supreme Court); *Nma v. Ridge*, 286 F. Supp. 2d 469, 476 n.9 (E.D. Pa. 2003) ("It is not clear to the court, nor does the court necessarily agree, that the length of the petitioner's detention should be aggregated to include time he was detained prior to his release on an order of supervision."). Absent Supreme Court or Tenth Circuit precedent applying aggregation to the *Zadvydas* six-month period, the Court declines to apply it here. *Cf. Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a [petitioner's] current detention.").

Accordingly, Mr. Nguyen's detention under *Zadvydas* remains presumptively reasonable as of this date, and his petition is premature.

**B.    The Court sees no indication that post-final-removal-order detention is not measured by § 1231 and *Zadvydas* alone.**

While Mr. Nguyen alleges Respondents failed to comply with regulatory provisions before re-detaining him after his release on the OOS—which was the only issue decided by the Report and Recommendation ("R. & R.") [Doc. No. 16][4]—the Court

---

[4] The R. & R. notes that it "does not address [Mr. Nguyen's] remaining arguments as to how the revocation of his release is otherwise unlawful under the APA or *Zadvydas*" and "declines to address [Mr. Nguyen's] request for declaratory judgment as to the legality and nature of his detention under ICE regulations and whether ICE's actions were arbitrary and capricious" because if the R. & R. "is adopted, [it] will moot these requests." [Doc. No. 16 at 13 n.5]. The R. & R.'s use of *United States v. Caceres*, 440 U.S. 741, 752–53 (1979), to justify resolving the case solely on the regulatory question is puzzling. *Caceres* was not a habeas case; rather, it involved a criminal defendant whose conversations were recorded by the Internal Revenue Service in violation of the agency's

does not have any binding precedent that would indicate that type of violation is the sort of constitutional and statutory guarantee protected by the writ of habeas corpus, or how an alleged regulatory violation can purportedly create greater rights to relief than that determined by the Supreme Court in *Zadvydas*.[5] Although plenty of district courts are concluding regulatory violations by Respondents can appropriately be remedied through grants of habeas relief and a petitioner's release from detention, those decisions are not binding precedent. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).

own internal regulations. The Supreme Court granted certiorari to decide whether evidence obtained in violation of IRS regulations could be admitted at the criminal trial. *Id.* at 743. It held that "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents," and emphasized that the regulation at issue was not mandated by constitutional or statutory command. *Id.* at 744, 749–50. And because the defendant could not "reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct," the Court concluded that the agency's noncompliance did not implicate the Due Process Clause. *Id.* at 752–53. Thus, *Caceres* rejects the notion that a regulatory violation automatically triggers the protections of the Due Process Clause. The R. & R.'s reliance on a regulatory-violation theory also runs counter to the Supreme Court's reasoning in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In rejecting the petitioner's attempt to use habeas to obtain additional administrative review of his asylum claim, the Court explained that habeas "at its core [is] a remedy for unlawful executive detention" and claims outside this core "may not be pursued through habeas." *Id.* at 119.

[5] In *Zadvydas*, the Supreme Court employed the canon of constitutional avoidance to confine the scope of § 1231(a)(6) to avoid potential due process concerns. 533 U.S. at 690, 699. Thus, the Court may presume that post-final-removal-order detention under § 1231(a)(6) that complies with *Zadvydas* does not violate due process because *Zadvydas* construed the statute to authorize detention only to the extent constitutionally permissible.

Moreover, this basis for habeas relief seems to be assumed rather than carefully examined. *See Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (explaining that the "sole function" of habeas "is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose"); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (explaining "that the traditional function of the writ is to secure release from illegal custody"); *Thuraissigiam*, 591 U.S. at 119 (explaining that habeas at its core is a remedy for unlawful detention and that claims "outside the 'core' of habeas [i.e., beyond simple release,] may not be pursued through habeas"). Several indicators suggest that a higher court, whether the Supreme Court or the Tenth Circuit, should decide whether the writ covers a regulatory violation such as that alleged by Mr. Nguyen where his statutory and constitutional claim is premature under the principal Supreme Court precedent addressing the lawfulness of detention for aliens with final orders of removal.[6]

This Court takes the view that, as the law currently stands, the writ does not provide the relief requested under these circumstances. Here, Mr. Nguyen contends that ICE failed to follow proper procedures when it re-detained him despite him having an OOS under 8 C.F.R. §§ 241.4 and 241.13. He contends that ICE did not adhere to the regulatory requirements governing written notice, review, and an informal interview. He

---

[6] The Tenth Circuit currently has on appeal a case where the government presents the argument that *Zadvydas* is the sole standard to measure post-final-removal-order detention under § 1231(a)(6). *See Munoz Ramirez v. Bondi, et al.*, No. 25-1263 (10th Cir.) (filed July 8, 2025). *See also Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (holding *Zadvydas* "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds").

asserts, without citing to any authority, that these "errors are not harmless" and that "they are constitutional violations that demand immediate release." [Doc. No. 19 at 10]. As far as this Court is aware, neither the Supreme Court nor the Tenth Circuit has specifically concluded that violations of 8 C.F.R. §§ 241.4 and 241.13 are at the level of the guarantees protected by the habeas corpus writ. *See, e.g.*, *Zadvydas*, 533 U.S. at 724 (Kennedy, J., dissenting) ("Were the INS, in an arbitrary or categorical manner, to deny an alien access to the administrative processes in place to review continued detention, habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures under 8 C.F.R. § 241.4 (2001).").

Further, under 28 U.S.C. § 2241(c)(3), a district court is only authorized to issue the writ of habeas corpus when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."[7] *See Zadvydas*, 533 U.S. at 688 ("[Section] 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The Supreme Court has cautioned that habeas relief does not extend to matters that do not bear on the legality of the petitioner's custody. *Thuraissigiam*, 591 U.S. at 107 (examining the scope of the writ of habeas corpus "when the Constitution was drafted and ratified" (citation omitted));

---

[7] The Tenth Circuit's decision in *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000), reinforces this narrow understanding of habeas jurisdiction. There, the court held that claims grounded in state law are not cognizable under § 2241 because federal habeas relief is limited to violations of federal constitutional or statutory law. *Montez* thus aligns with *Thuraissigiam* because both emphasize that federal habeas jurisdiction is limited to challenges to custody under federal law and not to collateral complaints about procedures.

*Preiser*, 411 U.S. at 484 (noting it is clear from the language of § 2241(c)(3) and "from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

Additionally, in other contexts, appellate courts have determined that regulatory violations do not allow for habeas relief. *See, e.g.*, *Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011) (in the context of a § 2241 habeas petition, the court concluded that there were no due process violations where there were delays in following applicable Bureau of Prisons' regulations and any conceivable violation was harmless); *Nabors v. Warden*, *U.S. Penitentiary*, No. 92-3282, 1993 WL 55940, at *2 (10th Cir. Mar. 1, 1993) (unpublished) (agreeing with the district court that the failure to hold a timely parole revocation hearing was not a basis for habeas relief and citing cases where other circuits had concluded the same).

Finally, even if Respondents failed to comply with the regulations, the Court is not convinced the remedy in a habeas petition for such violations would be release from custody.[8] Mr. Nguyen does not seek compliance with the regulations as part of his habeas

---

[8] To the extent that the failure to provide written notice or an informal interview is a regulatory violation that constitutes a procedural due process violation, the remedy for such violation would not be release from custody but would be for Respondents to comply with the regulations. *See Nabors*, 1993 WL 55940, at *2 (citing *United States v. Miller*, 599 F.2d 249, 251 (8th Cir. 1979) (holding that the only remedy for a failure to hold a timely initial parole hearing is an order to hold such hearing); *Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 89 (2d Cir. 1986) (absent prejudice or bad faith, the remedy for failure to hold a timely parole revocation hearing is only a hearing)); *see also Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976) (noting that Congress vested sole authority to grant or deny parole with the Parole Commission).

relief, but rather he seeks immediate release. Pet. ¶¶ 15, 20, 77–79. That the government might not have taken the correct *route* to detention does not mean the *detention* itself is unlawful or that release is the proper remedy.

## III.   <u>CONCLUSION</u>

In the end, this Court is limited to deciding cases and controversies, and a premature action is not yet ready for disposition. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (explaining that federal courts "are courts of limited jurisdiction" and are limited by Article III of the Constitution to "cases" and "controversies" (citation omitted)). To prevail on a § 2241 petition, a petitioner must demonstrate that he is held in violation of a federal constitutional or statutory right.[9] Here, if there is no violation of the constitutional or statutory right as determined by *Zadvydas*, how could the violations of the regulations yield a contrary result or a result not compelled by the statute or the Supreme Court? Rather, it is only "[a]fter th[e] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. This threshold has not been reached.

---

[9] *Compare Nguyen v. Noem*, 797 F. Supp. 3d 651, 664–65 (N.D. Tex. 2025) (concluding that a writ of habeas corpus was not the appropriate remedy to correct regulatory violations of 8 C.F.R. § 241.13, as "[i]t is a mere administrative regulation, not required as the result of the Constitution"); *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *4 (W.D. Okla. Oct. 31, 2025) (noting that habeas relief "is reserved for errors constitutional in scale" and concluding that petitioner failed to show that the appropriate remedy for ICE's regulatory violations was a writ of habeas corpus).

Having reviewed the entire record, the Court dismisses without prejudice to refiling Mr. Nguyen's habeas petition [Doc. No. 1], denies as moot Mr. Nguyen's emergency motion [Doc. No. 6], and rejects the Report and Recommendation [Doc. No. 16]. A separate judgment will follow.[10]

IT IS SO ORDERED this 31st day of December 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[10] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KHAI NGUYEN,                        )
                                    )
                 Petitioner,        )
                                    )
v.                                  )          Case No. CIV-25-01204-JD
                                    )
PAMELA BONDI, et al.,               )
                                    )
                 Respondents.       )

## <u>JUDGMENT</u>

Pursuant to the Order filed today, the Court dismisses without prejudice

Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] as

premature.

Entered this 31st day of December 2025.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

Khai Nguyen,                                    Case No.: 25-CV-01204-JD

      Petitioner

v.                                              **NOTICE OF APPEAL**

Pamela Bondi, Attorney General; et al.,

      Respondents.

Notice is hereby given that Petitioner, Khai Nguyen, in the above-named case hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered in this action on December 31, 2025 from the U.S. District Court for the Western District of Oklahoma.

DATED: January 4, 2026                    Respectfully submitted,

                                  RATKOWSKI LAW PLLC

                                  */s/ Nico Ratkowski*
                                  Nico Ratkowski (#0400413)
                                  332 Minnesota Street, Suite W1610
                                  Saint Paul, MN 55101
                                  P: (651) 755-5150
                                  E: nico@ratkowskilaw.com

                                  *Attorney for Petitioner-Appellant*